IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA T SHUMYE, | No. C06-03322 MJJ |
| Plaintiff, | **ORDER:** |
| v. | **(1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| SAMUEL D FELLEKE, | |
| Defendant. | **(2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

Before the Court is Plaintiff Rebecca Shumye's ("Plaintiff") Motion for Summary Judgment (Docket No. 90, hereafter "Plf.'s Motion") and Defendant Samuel D. Felleke's ("Defendant") Motion for Summary Judgment (Docket No. 105, hereafter "Def.'s Motion"). After reviewing the parties' submissions, the Court deems both motions suitable for resolution without oral argument.

For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion and **DENIES** Plaintiff's Motion.

**FACTUAL BACKGROUND**

Plaintiff, a citizen of Ethiopia, arrived in the United States in November 1998 to marry Defendant. Defendant, a United States citizen, sponsored Plaintiff and signed an Affidavit of Support Form I-864 ("Form I-864"). (Shumye Decl., Exh. A.) Plaintiff and Defendant were married in January 1999. The couple separated in October 1999. In 2003, they filed for divorce. In 2005, Plaintiff and Defendant agreed to a divorce settlement in which Defendant agreed to pay Plaintiff the

1  sum of $49,000.  (Shumye Decl., Exh E.)  The payment satisfied settlement of the couple's
2  California community property rights "including but not limited to the real properties at Cecilia
3  Avenue and Henderson Drive, the Vanguard and Schwab accounts, Husband's retirement benefits,
4  reimbursements, and all attorney fee issues and orders…." (*Id.*)  The property settlement was made
5  without prejudice to any and all of Plaintiff's INS and/ or immigration claims.  (*Id.*)

6  In May 2005, Plaintiff filed this claim to enforce Defendant sponsor's financial obligations
7  under the Form I-864 and for damages.  In October 2007, Plaintiff filed a motion asking the Court
8  "for judgment in Plaintiff's favor for the relief demanded" in her complaint, requesting that
9  Defendant honor his financial obligations under the Form I-864 and for damages that occurred as a
10 result of Defendant's breach of his financial obligations.  (Plf.'s Motion at 1, 14.)  The Court
11 construes Plaintiff's Motion as a Rule 56 motion for summary judgment on her affirmative claim.

12 In November 2007, Defendant also filed a Motion for Summary Judgment asking the Court
13 to "grant judgment in Defendant's favor on Plaintiff's claim for breach of affidavit support."   For
14 purposes of his Motion, Defendant concedes that there is a valid Form I-864 and that Plaintiff has
15 the right to sue for enforcement of that Form I-864.  However, Defendant   asserts that Plaintiff
16 cannot show that Defendant has breached any obligation under the Form I-864, and cannot prove
17 that she has been damaged.  Defendant further contends that undisputed evidence establishes that
18 Plaintiff's income was above 125% of the poverty line during the years in question.

19 Plaintiff is currently proceeding *pro se* in this action.

## LEGAL STANDARD

21 Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is
22 no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of
23 law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the
24 initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings,
25 depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence
26 of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving
27 party meets this initial burden, the burden then shifts to the non-moving party to present specific
28 facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324;

2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute might affect the case's outcome. *Id.* at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." *Id.* at 250. Thus, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in its favor. *Id.* However, "[i]f the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

## ANALYSIS

**I.      Defendant's Motion For Summary Judgment.**

    **A.      A Sponsored Immigrant Can Sue To Enforce A Sponsor's Form I-864 Obligation.**

For purposes of his motion, Defendant concedes that there is a valid Form I-864 and that Plaintiff has the right to sue for enforcement of that Form I-864.

Certain classes of immigrants may be deemed inadmissible including but not limited to, those that may be likely to become a public charge. *See* 8 U.S.C. §1182(a)(4). Family-sponsored immigrants seeking admission are admissible only if the person petitioning for the immigrants' admission signs an Affidavit of Support Form I-864. A Form I-864 is a legally enforceable contract between the sponsor and both the United States Government and the sponsored immigrant. *See Schwartz v. Schwartz*, 2005 U.S. Dist. LEXIS 43936 at *1-2 (W.D. Okla. May 10, 2005). The signing sponsor submits himself to the personal jurisdiction of any court of the United States or of any State, territory, or possession of the United States if the court has subject matter jurisdiction of a civil lawsuit to enforce the Form I-864. *See* 8 U.S.C. § 1182(a).

The express terms of the Form I-864 state that by signing the Form I-864, the sponsor is obligated to provide the sponsored immigrant with whatever support is necessary to maintain the sponsored immigrant at an annual income that is at least 125% of the federal poverty level annual

3

1  guideline. By signing a Form I-864 the "sponsor agrees to provide support to maintain the
2  sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line
3  during the period in which the affidavit is enforceable." 8 U.S.C. § 1183a(1)(A). Federal courts
4  have consistently found that a Form I-864 constitutes a legally binding and enforceable contract
5  between sponsor and a sponsored immigrant. *Cheshire v. Cheshire*, 2006 U.S. Dist. LEXIS 26602 at
6  *9 (M.D. Fla. May 4, 2006). The terms of the Form I-864 provide for the appropriate "measure of
7  damages that would put plaintiff in as good a position as she would have been had the contract been
8  performed." *Stump v. Stump*, 2005 U.S. Dist. LEXIS 26022 at *21 (N.D. Ind. May 27, 2005). A
9  sponsor may also be held liable for legal fees and other costs of collection. *See* 8 U.S.C. § 1183a(c).
10
11  The sponsor's obligation under Form I-864 terminates only if one of five conditions is met:
12  (1) the sponsor dies, (2) the sponsored immigrant dies, (3) the sponsored immigrant becomes a U.S.
13  citizen, (4) the sponsored immigrant permanently departs the U.S., or (5) the sponsored immigrant is
14  credited with 40 qualifying quarters of work. *See* 8 U.S.C. §1183a(a)(2). Divorce is not a condition
15  under which the sponsor's obligations under Form I-864 can be terminated. *See Schwartz,* 2005
16  U.S. Dist. LEXIS 43936 at *1-2. The sponsored immigrant is not required to notify the sponsor
17  when one of the conditions has been satisfied. *See Cheshire*, 2006 U.S. Dist. LEXIS 26602 at *13.

18  **B.    Contrary To Defendant's Position, Plaintiff's Income In Each Calendar Year**
19  **Must Be Analyzed Separately To Determine Whether Defendant Has Breached**
20  **The Form I-864.**

21  Defendant argues that to determine whether there is liability, the Court should look at
22  Plaintiff's aggregate income, rather than analyzing each calendar year separately. In particular,
23  Defendant argues that the Court should look at Plaintiff's total income from 2001 through 2007, and
24  subtract it from the sum of the 125% poverty thresholds during those years. The Court disagrees,
25  and finds this method inconsistent with the requirement under 8 U.S.C. § 1183(a)(1)(A) that
26  Defendant maintain Plaintiff "at an *annual* income" that is not less than the 125% poverty threshold.
27  "The Affidavit of Support provides for the measure of damages that would put the Plaintiff in as
28  good a position as she would have been in had the contract been performed." *See Stump*, 2005 U.S.

4

Dist. LEXIS 26022 at *21. To be placed in as good a position as she would have been had Defendant performed his support obligation on an annual basis, this Court must compare Plaintiff's income against the 125% poverty threshold for each individual year in question. The Court is not persuaded that the aggregate method advanced by Defendant, which was used by the Court in *Cheshire*, provides the proper measure for liability and damages, and will not follow that approach.

**C.     Defendant's Evidence Of Plaintiff's Alleged Income Does Not Establish That There Was No Breach Of The Agreement.**

Analyzing Plaintiff's income individually for each year from 2000 through 2007, the Court first notes that Plaintiff concedes that her income was at least 125% of the federal poverty guidelines in the years 2000, 2001, 2002, 2004, and 2005. (Plf's Motion at 5.) The court will therefore grant partial summary judgment in favor of Defendant with respect to those years. The only remaining years that are in dispute are 2003, 2006, and 2007.

Both parties submit contrasting spreadsheets or tables alleged to reflect their calculations of Plaintiff's income and benefits for the years 2000 thru 2007. (Plf.'s Motion; Tsadik Decl., Exh. 1.) The parties' differing calculations are primarily explained by contrasting views on what types of Plaintiff's resources qualify as "income" and therefore offset Defendant's financial obligation. The parties agree that money earned by Plaintiff through employment and alimony payments made by Defendant to Plaintiff constitute income for this purpose. However, the parties disagree as to whether the following resources qualify as Plaintiff's income: (1) $49,000 paid to Plaintiff by Defendant in the divorce settlement, (2) student loans taken out by Plaintiff, (3) student grants awarded to Plaintiff, (4) housing subsidies received by Plaintiff after she separated from Defendant, and (5) deposits reflected in Plaintiff's checking account. The Court addresses each of these disputed resources in turn.

**1.     Disputed Categories Of Alleged Income.**

**a.     The $49,000 Divorce Settlement Awarded To Plaintiff Is Not Income**.

Defendant is incorrect in asserting that the $49,000 payment made by him to Plaintiff as a result of their divorce settlement satisfies his Form I-864 support obligations. The Stipulation

5

1 entered in the divorce proceedings clearly states that the $49,000 is a settlement of the former
2 couple's California community property rights and that the settlement was made without prejudice
3 to Plaintiff's INS rights and/ or claims that may arise out of Defendant's sponsorship obligations.
4 (Shumye Decl., Exh. E.)  The $49,000 represents the value of Plaintiff's existing assets (e.g. her
5 share of the family home) and not income earned by Plaintiff within that specific year.[1]

        **b.**       **Plaintiff's Student Loans Are Not Income For The Purpose Of Offsetting Defendant's Financial Obligation.**

8 Sometime after separating from Defendant, Plaintiff enrolled in classes at California State
9 University, East Bay in Hayward, California.  Defendant submits evidence, and Plaintiff does not
10 dispute, that Plaintiff received student loans in connection with her educational pursuits.  (Tsadik
11 Decl., Exh. 4.)  However, because student loans constitute a form of debt for Plaintiff and must be
12 paid back, the Court finds that they do not count as income for the purposes of mitigating
13 Defendant's financial responsibilities under Form I-864.[2]  Defendant has not submitted evidence that
14 any portions of the loans or interest thereon have been forgiven or subsidized by Plaintiff's creditors.

        **c.**       **Plaintiff's Student Grants Are Considered Income For The Purpose Of Offsetting Defendant's Financial Obligation**.

17 Plaintiff was awarded student grants during 2006 and 2007.  The Court will consider such
18 grants as income for the purpose of calculating Plaintiff's income to mitigate Defendant's financial
19 obligation under Form I-864 because they do not have to be paid back.  The only evidence of grants
20 submitted to the Court are found in Defendant's spreadsheets and in documents Defendant acquired
21 from California State University, East Bay.  (Tsadik Decl., Exh. 1 and 4.)  The total amount of
22 grants received by Plaintiff according to these documents is $4,660 ($2,330 in 2006 and $2,330 in
23 2007).[3]  (Tsadik Decl., Exh. 4.)  These amounts will be considered when calculating Plaintiff's

---

[1] The Stipulation from the California court states that the amount of the settlement is $49,000. (Shumye Decl., Exh. E.)  Defendant submits into evidence a copy of a check for $49,300. (Tsadik Decl., Exh. 1.)  The $300 difference appears to be the interest Defendant was ordered to pay on the settlement amount.  However, the exact amount of the payment is immaterial given this Court's finding that the settlement payment does not constitute income.

[2] Plaintiff and Defendant each list different total amounts for Plaintiff's student loans in their submissions.  Because the Court finds the student loans are not income, the parties' disagreement on these figures is not a material dispute.

[3] Defendant's spreadsheet (Tsadik Decl., Exh. 1) only shows a total of $1,157 in grants received in 2007 by Plaintiff and nothing in 2006, but these figures do not match the documents Defendant submits as evidence. (Tsadik Decl., Exh. 4.)  These documents in the record state that Plaintiff received grants in the amounts of $840, $217, $433 and $840 in 2006 (totaling $2330) and the same amounts and total in 2007.  (Tsadik Decl., Exh. 4.)

6

income for 2006 and 2007.

### d. Affordable Housing Subsidies Are Income For The Purpose Of Offsetting Defendant's Financial Obligation.

Defendant contends that the value of housing subsidies received by Plaintiff should count towards her annual income for purposes of mitigating Defendant's financial obligations under the Form I-864. Defendant submits as evidence three documents regarding Plaintiff's housing subsidies provided by the property manager Keller of Plaza Apartments. (Tsadik Decl., Exh. 6.) Defendant obtained this information via a subpoena, and the property manager signed a form stating that she is the custodian of such records. The Court agrees that the value of the housing subsidies should be included when calculating Plaintiff's annual income. In *Cheshire,* the court did not calculate the plaintiff's public benefit of food stamps when determining her income because there was no direct evidence establishing the value of benefit received. *Cheshire,* 2006 U.S. Dist. LEXIS 26602 at *19. Here, in contrast, there is direct evidence showing the value of the public benefit received by Plaintiff.

Defendant submits a lease amendment stating that the value of Plaintiff's subsidy was $517 as of May 1, 2005. (Tsadik Decl., Exh. 6.) This is the earliest dated document of the three documents submitted regarding Plaintiff's housing subsidy. Defendant has not provided evidence showing that Plaintiff received housing subsidies prior to this date. The value of the rent subsidy in 2005 that Defendant has proven is $4,136 (8 months multiplied by the rent subsidy value, $517).

In 2006, the rent subsidy value remained the same as 2005 until March 1, 2006. The rent subsidy for January and February was $1,034 ($517 multiplied by two months). A document provided to the Defendant by Plaintiff's former property manager, dated February 24, 2006, listed the new rent subsidy as of March 1, 2006 as $681. (Tsadik Decl., Exh. 6.) The March 1, 2006 subsidy was effective until March 31, 2006 or annual recertification. For the first three months of 2006, Defendant has proven the value of Plaintiff's housing subsidy was $1,715 ($1,034 for January and February and $681 for March).

The parties do not dispute that Plaintiff continued to receive housing subsidies through September 2007, when she was evicted from the Keller Apartments. (Tsadik Decl., Exh. 6; Shumye

7

Decl. ¶ 24.) However, the documentation submitted by Defendant does not indicate whether there was any further increase in the monthly subsidy during that time period. Defendant's evidence therefore establishes as an undisputed fact that Plaintiff's housing subsidy in 2006 was at least $7,915 in 2006 and $6,129 in 2007. For purposes of Defendant's motion, where all reasonable inferences must be drawn in Plaintiff's favor, the Court cannot infer from Defendant's evidence that the housing subsidy increased during the period from March 2006 through September 2007.

     **e. The Court Cannot Infer Additional "Unidentified Income" From Defendant's Submission Of Plaintiff's Bank Statements.**

For purposes of Defendant's motion, where all reasonable inferences must be drawn in favor of Plaintiff, Defendant's submission of Plaintiff's bank statements as purported evidence of Plaintiff's "unidentified income" is not sufficient to demonstrate that Plaintiff received additional "unidentified income" that contributed to her annual income in the years 2003, 2006 and 2007. (Tsadik Decl., Exh. 5 and 5a.) Defendant asks the Court to draw inferences from the bank statements that Plaintiff must have had additional income beyond the categories already discussed above, but the Court is unable to do so on this record. Defendant does not offer any evidence linking specific deposits or amounts reflected on the bank statements with specific sources from which Plaintiff may have received the money.[4] While a large enough disparity between deposits reflected in the bank records and Plaintiff's other reported income might, in combination with other evidence, permit a factfinder to draw an inference that Plaintiff had additional sources of income, such an adverse inference cannot be drawn against Petitioner at the summary judgment stage, for purposes of Defendant's motion.

    **2. Income Totals Established By Defendant's Evidence.**

---

[4] The Court finds Defendant's proffered analysis of the bank statements in his briefs to be unreliable and unsupported by the record. For example, Defendant alleges that Plaintiff's 2003 bank deposits added up to $17,435.98 and that her "unidentifiable income" for that year was $11,095.98. (Tsadik Decl., Exh. 5.) However, it appears that Defendant arrived at this alleged "unidentifiable income" amount by adding all of Plaintiff's bank deposits for the year, but not subtracting the amount of some deposits that came from identifiable sources, such as his alimony payments, money transferred from Plaintiff's savings account, overdrafts from credit cards and reversals of bank fees. It also appears that Defendant's calculations did not take into account other types of resources that may have been deposited into the bank, such as money received from student loans and grants. Furthermore, Defendant's tally of Plaintiff's 2006 bank deposits includes amounts not supported by the actual bank statements provided.

8

Disregarding the divorce settlement, the student loans, and the deposits reflected on Plaintiff's bank statements for the reasons set forth above, Defendant's submitted evidence of Plaintiff's income does not place Plaintiff's income above the 125% federal poverty threshold in the years 2003, 2006 or 2007.  The sum of the income established by Defendant's evidence, including student grants, income received through employment, alimony payments made to Plaintiff, and the value of the housing subsidies, does not exceed the 125% threshold in any of these three years:

- **2003**: Defendant is unable to show that Plaintiff's income was more than $6,340, which is $4,885 less than $11,225 (125% of the 2003 federal poverty guideline). Plaintiff's only income established by Defendant's evidentiary submission for the year 2003 is $6,340 in the form of alimony payments from Defendant.[5] (Tsadik Decl., Exh. 1.)

- **2006**: Defendant is unable to show that Plaintiff's income was more than $11,175, which is $1,075 less than $12,250 (125% of the 2006 federal poverty guideline). Plaintiff's income established by Defendant's evidentiary submission for the year 2006 is the sum of: (1) Plaintiff's income earned through employment, the undisputed amount of $930 (Tsadik Decl., Exh.1; Shumye Decl. at 5), (2) student grants received in the amount of $2,330 (Tsadik Decl., Exh. 4), and (3) the value of the housing subsidy received in 2006, $7,915 (Tsadik Decl., Exh 6).

- **2007:** Defendant is unable to show that Plaintiff's income was more than $8,459, which is $4,303.50 less than $12,762.50 (125% of the 2007 federal poverty guideline).  Plaintiff's income established by Defendant's evidentiary submission for the year 2007 is the sum of: (1) student grants received in the amount of $2,330 (Tsadik Decl., Exh. 4) and  (2) housing subsidies received in the amount of $6,129 (Tsadik Decl., Exh 6).

---

[5]Defendant inconsistently lists several different figures for the value of this 2003 alimony payment, sometimes referring to the amount as $6,340, $9,510 or $9,480. (*Compare* Tsadik Decl., Exh. 1 *with* Docket No. 93 *and with* Docket No. 95.)  The actual evidence submitted by Defendant, however, confirms that the amount of the alimony payment in 2003 was $6,340. Defendant's own declaration (Docket No. 95) states that he paid Plaintiff $1585 a month from September 2003 onward.  September through December is four months, and $1585 multiplied by 4 is $6,340.

9

1  Defendant's evidentiary submission therefore fails to establish, on the basis of undisputed
2  facts, that he did not breach his Form I-864 support obligations in 2003, 2006 and 2007.
3  ///

### D. On This Record, Plaintiff Can Meet Her *Celotex* Burden.

Separate and apart from his affirmative effort to establish that Plaintiff's income exceeded the 125% federal poverty threshold in the relevant years, Defendant also moved for summary judgment on the ground that Plaintiff could not affirmatively establish, through admissible evidence, that her income fell below the 125% federal poverty threshold. Defendant therefore shifted the burden to Plaintiff, under *Celotex*, to present specific facts showing that there is a genuine issue for trial on her claim.

On this record, drawing all reasonable inferences in favor of Plaintiff, the Court concludes that Plaintiff has met that burden. While Plaintiff has not submitted any testimony directly stating that her total income in 2003, 2006 and 2007 did not exceed the 125% thresholds, both Defendant and Plaintiff have submitted into the record Plaintiff's tax returns and other tax forms for 2003 and 2006 that, on their face, indicate that Plaintiff's income was less than the 125% federal poverty threshold. (Tsadik Decl., Exh. 3; Plf's Motion, Exh. C.) A factfinder could reasonably infer from these records, together with the other evidence already discussed above, that there were no other components to Plaintiff's income in 2003 and 2006 beyond those discussed above, and that Plaintiff's income therefore did not exceed the 125% threshold. Because all reasonable inferences must be drawn in Plaintiff's favor for purposes of Defendant's motion, this evidence suffices to meet Plaintiff's *Celotex* burden, and Defendant's motion must be denied as to 2003 and 2006.[6]

## II. Plaintiff's Motion For Summary Judgment.

Plaintiff's motion for summary judgment must be denied. Plaintiff has not met her burden of establishing, by undisputed evidence, that Defendant breached his financial obligation under the Form I-864 for 2003, 2006, or 2007. Although Plaintiff's unsworn briefs make assertions as to her income amounts in those years, she submits no testimony or other competent evidence that establishes, as an undisputed fact, that her income did not exceed the 125% federal poverty

---

[6] Because Defendant's motion for summary judgment and Plaintiff's opposition thereto were filed in 2007, before the year was complete, the Court finds it premature to adjudicate whether Plaintiff can meet her *Celotex* burden as to 2007.

10

threshold. Plaintiff also fails to state in her declaration, or otherwise support with competent evidence the exact amount of her income during the years 2003, 2006 and 2007.

For purposes of Plaintiff's motion, unlike Defendant's motion, the Court must draw all reasonable inferences in favor of Defendant. Because inferences must be drawn away from Plaintiff, Plaintiff's IRS documents on their own, absent testimony or other proof that those forms listed every resource that could qualify as income for purposes of a Form I-864, do not provide a basis on which the Court can grant summary judgment in favor of Plaintiff. A factfinder would not be required to infer from Plaintiff's IRS documents, particularly in light of the unexplained aspects of Plaintiff's bank statements, that Plaintiff's IRS documents necessarily list every form of income that Plaintiff received in those years. In short, Plaintiff's income in the relevant years cannot be determined from the current state of the record without resolving conflicting inferences; for purposes of Plaintiff's summary judgment motion, this Court is not permitted to resolve those inferences in Plaintiff's favor.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment. The Court grants partial summary judgment in favor of Defendant with respect to his Form I-864 obligations for the years 2000, 2001, 2002, 2004 and 2005, but denies summary judgment as to 2003, 2006, and 2007. The Court **DENIES** Plaintiff's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: April 3, 2008

MARTIN J. JENKINS

UNITED STATES DISTRICT JUDGE